1  Jonathan M. Lebe, State Bar No. 284605
Jon@lebelaw.com
2  Zachary T. Gershman, State Bar No. 328004
Zachary@lebelaw.com
3  **Lebe Law, APLC**
777 S. Alameda Street, Second Floor
4  Los Angeles, CA 90021
Telephone: (213) 444-1973
5

6  Attorneys for Plaintiff Amir Abdulhussein,
Individually and on behalf of all others similarly situated
7

8

9  **UNITED STATES DISTRICT COURT**

10  **NORTHERN DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| Amir Abdulhussein, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>  vs.<br><br><br>Wells Fargo Bank, N.A.,<br><br>       Defendant. | **CLASS ACTION COMPLAINT FOR:**<br><br>1. Negligence;<br>2. Breach of Contract;<br>3. Breach of Implied Contract;<br>4. Violation of the CCPA (Cal. Civ. Code § 1798.150, *et seq.*);<br>5. Violation of the CRA (Cal. Civ. Code § 1798.80, *et seq.*);<br>6. Violation of the Right to Privacy (Cal. Const., art. I § 1); and<br>7. Violation of the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*).<br><br>**DEMAND FOR JURY TRIAL** |

21  Plaintiff Amir Abdulhussein ("Plaintiff"), individually and on behalf of

22  others similarly situated, alleges as follows:

23  **NATURE OF ACTION AND INTRODUCTORY STATEMENT**

24  1.  Every year millions of Americans have their most valuable personal

25  identifiable information ("PII") stolen and sold online because of unauthorized data

26  disclosures. Despite the dire warnings about the severe impact of unauthorized data

27  disclosures on Americans of all economic strata, companies still fail to put adequate

28  security measures in place to prevent the unauthorized disclosure of private data

1

about their customers or potential customers.

2.     Wells Fargo Bank, N.A. ("Defendant") is a nationally-chartered bank with major offices in this district, and headquarted in South Dakota.[1]  Defendant is "a leading financial services company that provides a diversified set of banking, investment and mortgage products and services, as well as consumer and commercial finance, through banking locations and offices, the internet (www.wellsfargo.com) and other distribution channels to individuals, businesses and institutions in all 50 states, the District of Columbia and in countries outside the U.S."

3.     In its business, Defendant collects the most sensitive and confidential PII of individuals, including their first and last names, mailing addresses, dates of birth, e-mail addresses, and Social Security numbers.

4.     As a corporation doing business in California, Defendant is legally required to protect PII from unauthorized access and exfiltration.

5.     On or around December 31, 2021, a now former employee of Defendant e-mailed files containing PII from Defendant's servers.

6.     The files that were removed from Defendant's servers contained sensitive PII of Plaintiff and putative class members, causing their sensitive and confidential PII to be illegally exposed including their first and last names, mailing addresses, date of birth, email addresses, Social Security numbers, and other information.[2]

7.     On or around May of 2022 – over four months after the data breach occurred breach – Defendant reported the unauthorized data breach to state Attorney General's offices across the United States.

8.     Defendant also provided notice to Plaintiff and others similarly situated affected by the breach including a brief description of what happened and

---

[1] *Rouse v. Wachovia Mort., FSB* (9th Cir. 2014) 747 F.3d 707, 715.

[2] Notice of Data Breach letter: https://oag.ca.gov/system/files/421286_final_redacted.pdf. ("Notice")

**CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL**

what information was impacted.

9.    On or around May 2022, Plaintiff received a notice from Defendant alerting him that his PII was impacted by the data breach.  The notice provided the following information about what happened and what PII was involved in the data breach:

"**What Happened?**

On December 31, 2021, a Wells Fargo employee emailed an encrypted file to his personal email address. The file contained your personal information. As soon as we became aware of the incident, we began our internal investigation process to identify the information impacted and the individuals to whom that information belongs. The employee no longer works for Wells Fargo. Wells Fargo has no evidence that the information has been misused. Below is more information on the event, and an offer of identity theft protection services.

**What Information Was Involved?**

The personal information impacted varies from person to person, and could include your name, address, phone number, email address, date of birth, and social security number.

10.    Recognizing that those impacted by the breach may face a certainly impending concrete risk of identity theft, Defendant provided credit monitoring services, as well as "Tips to Protect Your Personal Information":

**"What We Are Doing.**

Please be assured that we have taken steps to address the incident and to protect your personal information. We have policies and procedures in place to protect your information. We are taking measures to monitor your account(s) for suspicious events or changes and continually review our security measures to reduce the likelihood of this happening in the future.

We are offering you a complimentary two-year subscription to Experian IdentityWorks. This product provides you with identity theft detection that includes daily monitoring of your credit reports from the three national credit reporting companies (Experian®, Equifax® and TransUnion®), internet surveillance, and resolution of identity theft.

To accept this offer, please activate your subscription within 60 days of the date printed on this letter. Enroll online at www.experianidworks.com/3bplus or call 1-877-890-9332, Monday through Friday, 8:00 a.m. - 8:00 p.m. Central Time and Saturday/Sunday, 10:00 a.m. - 7:00 p.m. Central Time. By law, we cannot enroll for you.

You will each be asked to provide the following information for enrollment:

Activation Code: []

Engagement Number: []

Your social security number, email address, mailing address, phone number, and date of birth.

At the end of your free subscription, these services will automatically be canceled, and you will not be billed. Please see additional details enclosed.

11.     Notably, many individuals who were impacted by the breach were not provided notice of the data breach until more than four months after the unauthorized data breach reportedly occurred.

12.     In addition to the glaring delay in providing notice, Defendant's notice is also not legally compliant in that it does not detail whether the information was exfiltrated, unlawfully disclosed, or accessed as a result of the breach. Instead, the barebones notice provided to Plaintiff and class members only provided basic and vague information relating to the breach. Indeed, because of the inadequacies of the notice, many customers impacted by the data breach are still in the dark as to what type of PII of theirs was compromised by this breach and whether their PII implicated by the breach was exfiltrated.

13.    Moreover, Defendant either does not know or does not disclose how the breach occurred, e.g., how the former Wells Fargo employee was able to gain access to files containing PII, what steps Defendant has taken to prevent further data breaches, when Wells Fargo discovered that the PII related to the data breach had been exfiltrated by its own employee, and, most importantly, whether the stolen files were actually recovered from its own employee.

14.    In addition, the notice states that Defendant is offering victims of breach two years of identity theft detection from Experian IdentityWorks.  As a result of this offer, Defendant is acknowledging that the putative members of the class are subject to an imminent threat of identity theft and financial fraud.  This understanding is heightened further by a page entitled "Tips to Protect Your Personal Information," which further demonstrates that Defendant understands the consequences to putative class members as a result from this breach.

15.    As a result of Defendant's failure to provide reasonable and adequate data security, Plaintiff's and putative class members' PII has been exposed to those who should not have access to it.  Plaintiff and putative class members are now at much higher risk of identity theft and for cybercrimes of all kinds, especially considering the highly valuable and sought-after PII stolen here — information relating to names, addresses, social security numbers, email addresses, and other information provided in connection with class members' accounts with Wells Fargo – who they rely on for banking services.

16.    Defendant's Privacy Policy specifically states: "To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings."[3]

17.    Despite these claims that Defendant uses "security measures that

---

[3] Wells Fargo Bank N.A., Privacy-Security Individuals, https://www.wellsfargo.com/privacy-security/individuals/ (last accessed October 6, 2022).

comply with federal law" including "computer safeguards" and "secured files" Defendant allowed one of its employees to simply email a file containing class members' PII to their own personal email, resulting in a massive breach of critical and sensitive PII of its customers.

18.     The PII exposed by Defendant as a result of its inadequate data security is highly valuable on the black market to phishers, hackers, identity thieves, and cybercriminals.  Stolen PII is often trafficked on the "dark web," a heavily encrypted part of the Internet that is not accessible via traditional search engines.  Law enforcement has difficulty policing the dark web due to this encryption, which allows users and criminals to conceal identities and online activity.

19.     When malicious actors infiltrate companies and copy and exfiltrate the PII that those companies store, or have access to, that stolen information often ends up on the dark web because the malicious actors buy and sell that information for profit.

20.     The information compromised in this unauthorized data breach involves sensitive PII relating to consumers of Wells Fargo financial services including banking, which is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts.  Whereas here, the information compromised is difficult and highly problematic to change — first and last names, mailing addresses, dates of birth, and Social Security numbers.

21.     Once PII is sold, it is often used to gain access to various areas of the victim's digital life, including bank accounts, social media, credit card, and tax details.  This can lead to additional PII being harvested from the victim, as well as PII from family, friends, and colleagues of the original victim.

22.     Unauthorized data breaches, such as these, facilitate identity theft as hackers obtain consumers' PII and thereafter use it to siphon money from current

accounts, open new accounts in the names of their victims, or sell consumers' PII to others who do the same.

23.    Federal and state governments have established security standards and issued recommendations to minimize unauthorized data disclosures and the resulting harm to individuals and financial institutions.  Indeed, the Federal Trade Commission ("FTC") has issued numerous guides for businesses that highlight the importance of reasonable data security practices.  According to the FTC, the need for data security should be factored into all business decision-making.[4]

24.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.[5]  Among other things, the guidelines note businesses should properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct security problems.  The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of the breach.

25.    The FTC also recommends that companies limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor for suspicious activity on the network, and verify that third-party service providers have implemented reasonable security measures.[6]

---

[4] *See* Federal Trade Commission, Start With Security (June 2015), available at: https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited May 13, 2022).

[5] *See* Federal Trade Commission, Protecting Personal Information: A Guide for Business (Oct. 2016), available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited May 13, 2022).

[6] *See Id.*

26.    Highlighting the importance of protecting against unauthorized data disclosures, the FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect PII, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45.  Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.[7]

27.    Through negligence in securing Plaintiff's and putative class members' PII and allowing an unauthorized party, its own employee, to access to Plaintiff's and putative class members' PII, Defendant failed to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and the putative class members' PII.  Accordingly, Defendant's data security policies and practices constitute unfair acts or practices prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

28.    As a result of the unauthorized data disclosure, Plaintiff and putative class members are now at risk for actual identity theft in addition to other forms of fraud.  The ramifications of Defendant's failure to keep PII secure are long lasting and severe.  Once PII is stolen, fraudulent use of that information and damage to victims may continue for years.  The PII belonging to Plaintiff and class members is private, valuable, and sensitive in nature as it can be used to commit a lot of different harms in the hands of the wrong people.

29.    Defendant had ample resources necessary to prevent the unauthorized data disclosure, but neglected to adequately implement data security measures, despite its obligations to protect the PII of Plaintiff and putative class members. Had Defendant remedied the deficiencies in its data security systems and adopted

---

[7] Federal Trade Commission, Privacy and Security Enforcement Press Releases, available at https://www.ftc.gov/news-events/media-resources/protecting-consumer-privacy/privacy-security-enforcement (last visited May 13, 2022).

security measures recommended by experts in the field, it would have prevented the intrusions into its systems and, ultimately, the unauthorized access of PII.

30.    Moreover, Defendant, as a bank providing financial services to its customers, is subject to, and failed to comply with, Gramm-Leach-Bliley Act ("GLBA").

31.    Defendant collects nonpublic personal information, as defined by 15 U.S.C. § 6809(4)(A), 16 C.F.R. § 313.3(n) and 12 C.F.R. § 1016.3(p)(1). Accordingly, during the relevant time period Defendant was subject to the requirements of the GLBA, 15 U.S.C. §§ 6801.1 et seq., and subject to additional rules and regulations under the GLBA statutes, including the "GLBA Privacy Rule." Since the enactment of the Dodd-Frank Act, the Consumer Financial Protection Bureau ("CFPB") became responsible for implementing the Privacy Rule. In December 2011, the CFPB restated the implementing regulations in an interim final rule that established the Privacy of Consumer Financial Information, Regulation P, 12 C.F.R. § 1016 ("Regulation P"), with the final version becoming effective on October 28, 2014.

32.    Accordingly, Defendant's conduct is governed by the Privacy Rule prior to December 30, 2011, and by Regulation P after that date.

33.    Both the Privacy Rule and Regulation P require financial institutions to provide customers with an initial and annual privacy notice. These privacy notices must be "clear and conspicuous."16 C.F.R. §§ 313.4 and 313.5; 12 C.F.R. §§ 1016.4 and 1016.5. "Clear and conspicuous means that a notice is reasonably understandable and designed to call attention to the nature and significance of the information in the notice." 16 C.F.R. § 313.3(b)(1); 12 C.F.R. § 1016.3(b)(1). These privacy notices must "accurately reflect[] [the financial institution's] privacy policies and practices." 16 C.F.R. § 313.4 and 313.5; 12 C.F.R. §§ 1016.4 and 1016.5. They must include specified elements, including the categories of nonpublic personal information the financial institution collects and discloses, the

categories of third parties to whom the financial institution discloses the information, and the financial institution's security and confidentiality policies and practices for nonpublic personal information. 16 C.F.R. § 313.6; 12 C.F.R. § 1016.6. These privacy notices must be provided "so that each consumer can reasonably be expected to receive actual notice." 16 C.F.R. § 313.9; 12 C.F.R. § 1016.9. As alleged herein, Defendant violated the Privacy Rule and Regulation P.

34.     Moreover, The Safeguards Rule, which implements Section 501(b) of the GLBA,15 U.S.C. § 6801(b), requires institutions to protect the security, confidentiality, and integrity of customer information by developing a comprehensive written information security program that contains reasonable administrative, technical, and physical safeguards, including: (1) designating one or more employees to coordinate the information security program; (2) identifying reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information, and assessing the sufficiency of any safeguards in place to control those risks; (3) designing and implementing information safeguards to control the risks identified through risk assessment, and regularly testing or otherwise monitoring the effectiveness of the safeguards' key controls, systems, and procedures; (4) overseeing service providers and requiring them by contract to protect the security and confidentiality of customer information; and (5) evaluating and adjusting the information security program in light of the results of testing and monitoring, changes to the business operation, and other relevant circumstances. 16 C.F.R. §§ 314.3 and 314.4. As alleged herein, Defendant violated the Safeguard Rule.

35.     Indeed, Defendant failed to assess reasonably foreseeable risks to the security, confidentiality, and integrity of the PII in its custody or control, leading to the breach on or about December 31, 2021.

36.     Defendant failed to design and implement informational safeguards to control the risks identified through risk assessment, and regularly test or otherwise

monitor the effectiveness of the safeguards' key controls, systems, and procedures, leading to the exfiltration of data in this matter.

37.    Defendant failed to evaluate and adjust its information security program in light of the results of testing and monitoring, changes to the business operation, and other relevant circumstances.

38.    As a direct and proximate result of Defendant's actions and inactions, Plaintiff and putative class members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and fraud, requiring them to take the time which they otherwise would have dedicated to other life demands such as work and family in an effort to mitigate the actual and potential impact of the unauthorized data disclosure on their lives.  For instance, Plaintiff and class members have had to spend time mitigating the threat of identity theft by monitoring their accounts and credit reports, among other things.

## **THE PARTIES**

39.    Plaintiff Amir Abdulhussein is a citizen and resident of the State of California.  Plaintiff is a customer of Defendant.  Plaintiff was impacted by the unauthorized data breach stemming from the exfiltration of data from Defendant's servers, and implicated Plaintiff's personal and sensitive information, including his first and last name, mailing address, date of birth, email address, Social Security number, and other information.

40.    Plaintiff received a Notice of Data Breach letter on around May of 2022, which informed him that there was an "incident that may affect the security of [his] personal information."  According to Wells Fargo, the type of data at issue included Plaintiff's name, address, phone number, email address, date of birth, and Social Security number – however, Defendant also stated in this same notice that the PII involved potentially varied "from person to person." Defendant also asked Plaintiff to sign up for credit monitoring services – which implies that the PII at issue is not only at risk of being exposed, but used to commit identity theft and

financial fraud.

41.     As part of the banking and financial services it offers, Defendant obtained and continues to maintain Plaintiff's and Class Members' PII and has a continuing legal duty and obligation to protect that sensitive information from unauthorized access and disclosure.  Defendant required that Plaintiff provide and entrust to it his PII as a condition of receiving financial services.  Plaintiff would not have entrusted his PII to Defendant had he known that it would fail to maintain adequate data security.  Plaintiff's PII was compromised and disclosed to an unauthorized party as a result of the breach on or around December 31, 2021.

42.     Moreover, since the breach, Plaintiff has suffered from numerous scam calls, including from individuals possessing Plaintiff's PII, including his social security number, date of birth, and contact information.

43.     Plaintiff also suffered actual injury in the form of damages to and diminution in the value of his PII—a form of intangible property that he entrusted to Defendant for the purpose of obtaining services from Defendant, which was compromised in and as a result of the breach.

44.     Plaintiff also suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

45.     Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII, especially his Social Security Number, being potentially placed in the hands of criminals.

46.     As a result of the breach, Plaintiff has suffered a loss of time and has spent and continues to spend a considerable amount of time on issues related to this.  In response to the breach, Plaintiff has spent significant time monitoring his accounts and has sustained emotional distress in addition to his lost time.  This is time that was lost and unproductive and took away from other activities and duties

47.    Defendant Wells Fargo Bank is a National Association bank with its principal place of business in Sioux Falls, South Dakota.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

48.    Subject matter jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class Members, at least one class member is a citizen of a state different from that of Defendant, and the amount in controversy exceeds $5 million, exclusive of interest and costs.  The court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

49.    This Court has personal jurisdiction over Defendant because it is registered to conduct business in California and has sufficient minimum contacts with California.

50.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's and putative class members' claims occurred in this District.  Venue is also proper under 28 U.S.C. § 1391(c) because Defendant is a corporation that does business in and is subject to personal jurisdiction in this District.

51.    This Action is properly assigned to the San Francisco Division of this District pursuant to N.D. Cal. L.R. 3-2, because Defendant maintains corporate offices in San Francisco, which is served by the San Francisco Division of this District.

## CLASS ACTION ALLEGATIONS

52.    Pursuant to Rule 23(b)(2), (b)(3) and (c)(4) of the Federal Rules of Civil Procedure, Plaintiff, individually and on behalf of all others similarly situated, brings this lawsuit on behalf of herself and as a class action on behalf of the following classes:

**Nationwide Class:**    All persons in the United States whose personal information was accessed, compromised, or stolen as a result of the data

**CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL**

breach announced by Defendant on or about May 6, 2022.

**California Subclass:**  All persons in California whose personal information was accessed, compromised, or stolen as a result of the data breach announced by Defendant on or about May 6, 2022.

53.    Members of the class and subclass described above will be collectively referred to as "class members."  Plaintiff reserves the right to establish other or additional subclasses, or modify any class or subclass definition, as appropriate based on investigation, discovery, and specific theories of liability.

54.    Excluded from the class and subclass is Defendant and any entities in which Defendant or its subsidiaries or affiliates have a controlling interest, and Defendant's officers, agents, and employees.  Also excluded from the class are the judge assigned to this action, and any member of the judge's immediate family.

55.    **Numerosity:** The members of each class are so numerous that joinder of all members of any class would be impracticable.  Plaintiff reasonably believes that class members amount to thousands of such individuals.  The names and addresses of class and subclass members are identifiable through documents maintained by Defendant.

56.    **Commonality and Predominance:**  This action involves common questions of law or fact, which predominate over any questions affecting individual Class members, including:

(a) Whether Defendant represented to class members that it would safeguard Plaintiff's and class members' PII;

(b) Whether Defendant owed a legal duty to Plaintiff and class members in exercising due care in collecting, storing, and safeguarding their PII;

(c) Whether Defendant breached a legal duty to Plaintiff and class members to exercise due care in collecting, storing, and safeguarding their PII;

(d) Whether Plaintiff's and class members' PII was accessed, compromised, or stolen in the unauthorized data disclosure;

(e) Whether a contract existed between Plaintiff and class members, and the terms of that contract;

(f) Whether Defendant breached the contract by having inadequate safeguards;

(g) Whether Defendant failed to adhere to its own posted privacy policy in violation of Cal. Bus. & Prof. Code § 22576;

(h) Whether Defendant's conduct was an unlawful or unfair business practice under Cal. Bus. & Prof. Code § 17200, *et seq.*;

(i) Whether Defendant's conduct violated the Consumer Records Act, Cal. Civ. Code § 1798.80, *et seq.*;

(j) Whether Defendant violated the California Consumer Privacy Act, Cal. Civ. Code § 1798.150, *et seq.*;

(k) Whether Defendant's conduct violated § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, *et eq.*;

(l) Whether Plaintiff and class members are entitled to equitable relief, including, but not limited to, injunctive relief and restitution; and

(m) Whether Plaintiff and class members are entitled to actual, statutory, or other forms of damages, and other monetary relief.

57.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of other similarly situated class members.  Similar or identical statutory and common law violations, business practices, and injuries are involved.  Individual questions, if any, pale by comparison, in both quantity and quality, to the numerous common questions that dominate this action.

58.    **Typicality:**  Plaintiff's claims are typical of the claims of the other class members because, among other things, Plaintiff and the other class members

1    were injured through substantially uniform misconduct by Defendant.  Plaintiff is
2    advancing the same claims and legal theories on behalf of herself and all other class
3    members, and there are no defenses that are unique to Plaintiff.  The claims of
4    Plaintiff and those of other class members arise from the same operative facts and
5    are based on the same legal theories.

6        59.  **Adequacy of Representation:**  Plaintiff is an adequate representative
7    of the classes because her interests do not conflict with the interests of the other
8    class members she seeks to represent.  Plaintiff has retained counsel competent and
9    experienced in complex class action litigation and Plaintiff will prosecute this
10   action vigorously.  The class members' interests will be fairly and adequately
11   protected by Plaintiff and her counsel.

12       60.  **Ascertainability:**  All members of the proposed class are readily
13   ascertainable.  Indeed, Defendant has already preliminarily identified and sent
14   notice of the data breach to class members and has access to their names and
15   addresses.

16       61.  **Superiority:**  A class action is superior to any other available means
17   for the fair and efficient adjudication of this controversy, and no unusual difficulties
18   are likely to be encountered in the management of this matter as a class action.  The
19   damages, harm, or other financial detriment suffered individually by Plaintiff and
20   the other class members are relatively small compared to the burden and expense
21   that would be required to litigate their claims on an individual basis against
22   Defendant, making it impracticable for class members to individually seek redress
23   for Defendant's wrongful conduct.  Even if class members could afford individual
24   litigation, the court system could not.  Individualized litigation would create a
25   potential for inconsistent or contradictory judgments and increase the delay and
26   expense to all parties and the court system.  By contrast, the class action device
27   presents far fewer management difficulties and provides the benefits of single
28   adjudication, economies of scale, and comprehensive supervision by a single court.

# **FIRST CAUSE OF ACTION**

## **Negligence**

## **(On behalf of Plaintiff and the Nationwide Class)**

62.     Plaintiff hereby re-alleges and incorporates by reference the above allegations by reference as if fully set forth herein.

63.     Defendant owed a duty to Plaintiff and class members to exercise reasonable care in obtaining, securing, safeguarding, storing, and protecting Plaintiff's and class members' PII from being compromised, lost, stolen, and accessed by unauthorized persons.  This duty includes, among other things, designing, implementing, maintaining, and testing its data security systems to ensure that Plaintiff's and class members' PII in Defendant's possession was adequately secured and protected, including using encryption technologies. Defendant further had a duty to implement processes that would detect a breach of their computer servers in a timely manner.

64.     Defendant owed a duty of care to Plaintiff and class members to provide security consistent with industry standards, and to ensure that its systems and networks adequately protected the PII it stored, maintained, and/or obtained including through the use of adequate encryption technology.

65.     Defendant owed a duty of care to Plaintiff and class members because they were foreseeable and probable victims of any inadequate data security practices.

66.     Defendant knew that the PII of Plaintiff and class members was personal and sensitive information that is incredibly valuable to identity thieves and other criminals.  Defendant also knew of the serious harms that could happen if the PII of Plaintiff and class members were wrongfully disclosed, if disclosure was not fixed, or if Plaintiff and class members were not provided with timely and legally compliant notice detailing the PII implicated by the data breach.

67.     Plaintiff and class members entrusted Defendant with their PII when

**CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL**

Defendant obtained their PII in connection with their benefit plans. As such, Defendant had an obligation to safeguard their information and was in the best position to protect against the harm suffered by Plaintiff and class members as a result of the data breach to its computer servers.

68.    Defendant's own conduct also created a foreseeable risk of harm to Plaintiff's and class members' PII. Defendant's misconduct included failing to implement the systems, policies, and procedures necessary to prevent the unauthorized data breach.

69.    Defendant knew, or should have known, of the risks inherent in collecting and storing PII and the importance of adequate security. Defendant knew about — or should have been aware of — numerous and well-publicized unauthorized data disclosures affecting businesses, especially companies storing sensitive PII, such as those maintained by Defendant in relation to benefit plans.

70.    Defendant breached its duties to Plaintiff and class members by failing to provide fair, reasonable, or adequate computer systems and data security to safeguard the PII of Plaintiff and class members.

71.    In addition, Defendant breached its duty to provide legally compliant and timely notice of the breach to Plaintiff and class members and to adequately disclose what PII was implicated by the breach and how the PII was affected. For instance, Defendant failed to notify Plaintiff and class members of whether the PII implicated by the data breach was disclosed, accessed, stolen, or exfiltrated.

72.    Moreover, Defendant did not provide notice of the unauthorized data breach until over four months after the breach occurred. Timely notice was required so that Plaintiff and class members can take steps to mitigate the harms of the breach by freezing their credit reports, monitoring their accounts, contacting their financial institutions, obtaining credit monitoring services, and taking other avenues to prevent future harms. This lengthy delay in providing notice prevented Plaintiff and class members from taking appropriate measures that could have

CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL

prevented some of the damages they suffered.  As a result, Plaintiff and class members suffered incrementally increased damages that they would not have suffered with timely notice.

73.    In addition, because Defendant knew that a breach of its systems would damage thousands of individuals whose PII was inexplicably stored or was accessible, including Plaintiff and class members, Defendant had a duty to adequately protect its data systems and the PII contained and/or accessible therein.

74.    Defendant also had independent duties under state and federal laws that required Defendant to reasonably safeguard Plaintiff's and class members' PII. Defendant's failure to comply with state and federal regulations provides further evidence of Defendant's negligence in failing to exercise reasonable care in safeguarding and protecting Plaintiff's and class members' PII.

75.    In engaging in the negligent acts and omissions as alleged herein, which permitted an unauthorized party to illegally access Defendant's computer servers that stored Plaintiff's and class members' PII, Defendant violated Section 5 of the FTC Act, which prohibits "unfair…practices in or affecting commerce." This includes failing to have adequate data security measures and failing to protect Plaintiff's and the class members' PII.

76.    Plaintiff and the class members are among the class of persons Section 5 of the FTC was designed to protect, and the injuries suffered by Plaintiff and the class members are the types of injury Section 5 of the FTC Act was intended to prevent.

77.    Neither Plaintiff nor the other class members contributed to the unauthorized data breach as described in this Complaint.

78.    As a direct and proximate cause of Defendant's conduct, Plaintiff and class members have suffered and/or will suffer injury and damages, including but not limited to: (a) the loss of the opportunity to determine for themselves how their PII is used; (b) the publication and/or theft of their PII; (c) out-of-pocket expenses

associated with the prevention, detection, and recovery from the unauthorized use of their PII; (d) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the unauthorized data breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from tax fraud and identity theft; (e) costs associated with placing freezes on credit reports; (f) anxiety, emotional distress, loss of privacy, and other economic and non-economic losses; (g) the continued risk to their PII, which remains in Defendant's possession (and/or Defendant has access to) and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession; and, (h) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised PII.

79.     But for Defendant's wrongful and negligent breach of their duties owed to Plaintiff and class members, their PII would not have been compromised, stolen, and viewed by unauthorized persons.  Defendant's negligence was a direct and legal cause of the theft of the PII of Plaintiff and class members and all resulting damages.

80.     The injury and harm suffered by Plaintiff and class members was the reasonably foreseeable result of Defendant's failure to exercise reasonable care in safeguarding and protecting Plaintiff's and the other class members' PII.

81.     As a result of this misconduct by Defendant, the PII and benefit plan information of Plaintiff and class members was compromised, placing them at a greater risk of identity theft, subjecting them to identity theft, and resulting in disclosure of their PII to third parties without their consent.  Plaintiff and class members also suffered diminution in value of their PII in that it is now easily available to hackers on the dark web.

82.     Plaintiff and class members also suffered non-economic injuries,

including loss of time spent in responding to the harms resulting from the data breach that they would not have spent had the data breach not occurred. For instance, Plaintiff and class members have had to expend time attempting to mitigate the threat of identity theft by monitoring their accounts and credit reports, among other things.

83.    As a direct and proximate result of Defendant's negligence, Plaintiff and class members have been injured as described herein, and are entitled to damages including, but not limited to, compensatory, nominal, and consequential damages.

## SECOND CAUSE OF ACTION

### Breach of Contract

### (On behalf of Plaintiff and the Nationwide Class)

84.    Plaintiff hereby re-alleges and incorporates by reference the above allegations by reference as if fully set forth herein.

85.    At all relevant times a contract existed and was in force between Defendant on one hand and Plaintiff and the class members on the other. This contract was written and was supplemented by implied and written terms that existed and were maintained online on Defendant's website. Any implied contracts or supplemental terms or conditions of the contract were written by Defendant and published electronically to Plaintiff and the class members online in such a manner and through such conduct so as to create promises on the part of the Defendant.

86.    These written conditions include, but are not limited to the terms and conditions included in Defendant's Privacy Policy, which states the following:

> "To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings."

87.    Defendant's privacy policy is an agreement between Defendant and Plaintiff and class members who entrusted Defendant with their PII, including

sensitive PII provided in exchange for banking and financial services. Defendant breached its own privacy policy by subjecting Plaintiff's and class members' PII to "unauthorized access and use" and by failing to implement "security measures that comply with federal law" and "computer safeguards and secured files" to prevent the breach from occurring.

88.    Defendant also breached these duties and violated these promises by failing to properly safeguard the sensitive PII of Plaintiff and class members by failing to use the promised safeguards, and by failing to use security measures that comply with federal laws including but not limited to Section 5(a) of the FTC Act, by failing to protect customer records and information from threats, hazards, or unauthorized access, by negligently, carelessly, and recklessly collecting, maintaining, and controlling this information, and by engineering, designing, maintaining, and controlling systems that exposed Plaintiff's and class members' sensitive PII of which Defendant had possession to control the risk of exposure to unauthorized persons.

89.    Defendant violated its commitment to maintain the confidentiality and security of the PII of Plaintiff and class members by failing to comply with applicable laws, regulations, and industry standards relating to data security.

90.    At all relevant times and in all relevant ways, Plaintiff and class members performed their obligations under the contract in question or were excused from performance of such obligations through the unknown and unforeseen conduct of others.

91.    As a direct consequence of the breaches of contract and violations of promises described above, one of Defendant's own employees gained access to, exfiltrated, stole, and gained disclosure of the sensitive PII of Plaintiff and class members, causing them harms and losses including but not limited to (a) economic loss including from unauthorized charges, (b) the loss of control over the use of their identity, (c) harm to their constitutional right to privacy, (d) lost time

dedicated to the investigation of the breach of their own personal information, (e) costs associated with the detection and prevention to cure any harm to their privacy including credit freezes, credit monitoring, and identity theft services, (e) the need for future expenses and time dedicated to the recovery and protection of further loss associated with the continued risk of exposure of their PII, (f) the diminution of value of their PII, and (g) privacy injuries associated with having their sensitive PII disclosed.

92.    Plaintiff and class members were harmed as a result of Defendant's breach because their sensitive PII stemming from their banking services and financial information was compromised, placing them at a greater risk of identity theft and subjecting them to identity theft.  Plaintiff and class members also suffered diminution of value of their PII in that it is now easily available to hackers on the dark web.  Plaintiff and class members have also suffered consequential out of pocket losses for procuring credit freeze or protection services, identity theft monitoring, and other expenses relating to identity theft losses or protective measures.

93.    Plaintiff and class members are entitled to compensatory, consequential, and nominal damages resulting from Defendant's breach of contract.

## THIRD CAUSE OF ACTION

### Breach of Implied Contract

### (On behalf of Plaintiff and the Nationwide Class)

### (In the Alternative to the Claim for Breach of Express Contract)

94.    Plaintiff hereby re-alleges and incorporates by reference the above allegations by reference as if fully set forth herein.

95.    Through its course of conduct, Defendant entered into implied contracts with Plaintiff and class members for Defendant to implement adequate data security to safeguard and protect the privacy of Plaintiff's and class members'

1    PII.

2        96.    Defendant induced Plaintiff and class members to provide and entrust

3    their PII, including their first and last names, mailing addresses, dates of birth,

4    email addresses, Social Security numbers, and other information, as a condition for

5    servicing their banking and financial services.

6        97.    Defendant solicited and invited Plaintiff and class members to provide

7    their PII as part of its regular business practices.  Plaintiff and class members

8    accepted Defendant's offer and provided their PII to Defendant.

9        98.    As a condition of being customers of Defendant, Plaintiff and class

10   members provided and entrusted their PII to Defendant.  In doing so, Plaintiff and

11   class members entered into implied contracts with Defendant by which Defendant

12   agreed to safeguard and protect Plaintiff's and class members' PII, to keep it secure,

13   and to timely notify Plaintiff and class members in the event that their data was

14   breached, accessed, compromised, and/or stolen.

15       99.    Plaintiff and class members provided their sensitive PII to Defendant

16   with the understanding that Defendant would take adequate measures to protect the

17   information.  As a result, there was a meeting of the minds between Defendant and

18   Plaintiff and class members, as evidenced by the conduct of the parties, that

19   Defendant would take adequate measures to protect the PII of Plaintiff and class

20   members in exchange for Defendant's services.

21       100.   An implied contract was formed when Plaintiff and class members

22   provided their sensitive PII to Defendant in exchange for servicing their benefit

23   plans with the expectation that such sensitive PII would be protected.

24       101.   Defendant breached these implied contracts by failing to properly

25   safeguard Plaintiff's and class members' PII and failing to provide timely notice of

26   the breach.  Indeed, Defendant did not provide notice to Plaintiff and class members

27   until over four months after the breach occurred.

28       102.   Defendant also breached these implied contracts by violating its own

**CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL**

privacy policy by subjecting Plaintiff's and class members' PII to "unauthorized access and use" and by failing to implement "security measures that comply with federal law" and "computer safeguards and secured files" to prevent the breach from occurring.

103.   Defendants violated its commitment to maintain the confidentiality and security of the PII of Plaintiff and the members, and failed to comply with its own policies, applicable laws, regulations, and industry standards relating to data security.

104.   Plaintiff and class members fully performed their obligations under the implied contracts with Defendant.

105.   As a direct consequence of the breaches of contract and violations of promises described above, unauthorized users gained access to, exfiltrated, stole, and gained disclosure of the sensitive PII of Plaintiff and class members, causing them harms and losses including but not limited to (a) economic loss including from unauthorized charges, (b) the loss of control over the use of their identity, (c) harm to their constitutional right to privacy, (d) lost time dedicated to the investigation of the breach of their own personal information, (e) costs associated with the detection and prevention to cure any harm to their privacy including credit freezes, credit monitoring, and identity theft services, (e) the need for future expenses and time dedicated to the recovery and protection of further loss associated with the continued risk of exposure of their PII, (f) the diminution of value of their PII, and (g) privacy injuries associated with having their sensitive PII disclosed.

106.   Plaintiff and class members were harmed as a result of Defendant's breach because their sensitive PII stemming from their benefit plans was compromised, placing them at a greater risk of identity theft and subjecting them to identity theft.  Plaintiff and class members also suffered diminution of value of their PII in that it is now easily available to hackers on the dark web.  Plaintiff and

1    class members have also suffered consequential out of pocket losses for procuring

2    credit freeze or protection services, identity theft monitoring, and other expenses

3    relating to identity theft losses or protective measures.

4        107.   This breach of the implied contract was a direct and legal cause of the

5    injuries and damages to Plaintiffs and class members as described above.

6                            **FOURTH CAUSE OF ACTION**

7        **Violation of the California Consumer Privacy Act ("CCPA")**

8                    **(Cal. Civ. Code § 1798.150)**

9            **(On behalf of Plaintiff and the California Subclass)**

10       108.   Plaintiff hereby re-alleges and incorporates by reference the above

11   allegations by reference as if fully set forth herein.

12       109.   The CCPA creates a private right of action for violations of the statute

13   as specified under Cal. Civ. Code § 1798.150(a)(1), which states:

14       Any consumer whose nonencrypted and nonredacted personal information,

15       as defined in subparagraph (A) of paragraph (1) of subdivision (d) of Section

16       1798.81.5, is subject to an unauthorized access and exfiltration, theft, or

17       disclosure as a result of the business's violation of the duty to implement and

18       maintain reasonable security procedures and practices appropriate to the

19       nature of the information to protect the personal information may institute a

20       civil action for any of the following:

21       (A) To recover damages in an amount not less than one hundred dollars

22           ($100) and not greater than seven hundred and fifty ($750) per consumer

23           per incident or actual damages, whichever is greater.

24       (B) Injunctive or declaratory relief.

25       (C) Any other relief the court deems proper.

26       110.   At all relevant times, Defendant was and still is a "business" under

27   Section 1798.140(b) of the CCPA as a corporation operating in the State of

28   California that collect consumers' personal information, and that either has annual

operating revenue above $25 million, collects the personal information of 50,000 or more California residents annually, or derives at least 50 percent of its annual revenue from the sale of personal information of California residents.

111. At all relevant times, Plaintiff and the California subclass were "consumers" under Section 1798.140(g), and also, under the terms of the CCPA as natural persons as defined in Section 17014 of Title 18 of the California Code of Regulations.

112. By the acts described above, Defendant violated the CCPA by negligently, carelessly, and recklessly collecting, maintaining, and controlling Plaintiff's and class members' sensitive banking and financial information and by engineering, designing, maintaining, and controlling systems that exposed Plaintiff's and class members' sensitive personal information of which Defendant had possession to control the risk of exposure to unauthorized persons, thereby violating their duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information. Defendant allowed an individual to view, use, manipulate, exfiltrate, and steal the personal information of Plaintiff and class members, including information obtained in connection with their financial information.

113. Section 1798.150(b) specifically provides that: "No notice shall be required prior to an individual consumer initiating an action solely for actual pecuniary damages suffered as a result of the alleged violations of this title." Plaintiff has issued the required notice of these alleged violations to Defendant under Section 1798.150(b) and will be amending this Complaint to seek statutory and injunctive relief upon the expiration of the 30-day cure period pursuant to Section § 1798.150(a). Accordingly, by way of this Complaint, Plaintiff seeks actual pecuniary damages suffered as a result of the violations of the California Consumer Privacy Act on behalf of herself and similarly situated putative class members.

114.   As a result of Defendant's violations, Plaintiff and the class members are entitled to all actual and compensatory damages according to proof or statutory damages allowable under the CCPA, whichever are higher, and to such other and further relief as this Court may deem just and proper.

### FIFTH CAUSE OF ACTION

**Violation of the California Customer Records Act ("CRA")**

**(Cal. Civ. Code § 1798.80 *et seq.*)**

**(On behalf of Plaintiff and the California Subclass)**

115.   Plaintiff hereby re-alleges and incorporates by reference the above allegations by reference as if fully set forth herein.

116.   California Civil Code section 1798.80, *et seq.*, known as the "Customer Records Act" ("CRA") was enacted to "encourage business that own, license, or maintain personal information about Californians to provide reasonable security for that information." Cal. Civ. Code § 1798.81.5(a)(1).

117.   Section 1798.81.5(b) of the CRA requires any business that "owns, licenses, or maintains personal information about a California resident" to "implement and maintain reasonable security procedures and practices appropriate to the nature of the information," and "to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

118.   Section 1798.81.5(d)(1)(B) defines "personal information" as including an individual's first name or first initial and the individual's last name in combination with any one or more of the following data elements, when either the name or the data elements are not encrypted or redacted: (i) social security number, (ii) driver's license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual, (iii) account number or credit or debit card number, in combination with any required security code, access code, or

password that would permit access to an individual's financial account, (iv) medical information, (v) health insurance information, (vi) unique biometric data generated from measurements or technical analysis of human body characteristics, such as a fingerprint, retina, or iris image, used to authenticate a specific individual, (vii) genetic data.  Cal. Civ. Code § 1798.81.5(d)(1)(A).

119.    Personal information also includes "[a] username or email address in combination with a password or security question and answer that would permit access to an online account."  Cal. Civ. Code § 1798.81.5(d)(1)(B).

120.    At all relevant times, Defendant was and still is a "business" under the terms of the CRA as sole proprietorships, partnerships, corporations, associations, financial institutions, or other groups, operating in the State of California that owned or licensed computerized data that included the personal information of Plaintiff and the California subclass.

121.    At all relevant times, Plaintiff and the California subclass were "customers" under the terms of the CRA as natural persons who provided personal information to Defendant for the purpose of obtaining a service from Defendant.

122.    As alleged in detail above, Defendant failed to "implement and maintain reasonable security procedures and practices appropriate to the nature of the information," and "to protect the personal information from unauthorized access, destruction, use, modification, or disclosure," resulting in the data breach at issue which occurred on or around December 31, 2021.

123.    By the acts described above, Defendant violated the CRA by allowing unauthorized access to Plaintiff's and class members' PII, including highly sensitive information, such as first and last names, mailing addresses, dates of birth, email addresses, and Social Security numbers provided in connection with Defendant's services.

124.    Moreover, the statute further provides: "A person or business that maintains computerized data that includes personal information that the person or

business does not own shall notify the owner or licensee of the information of the breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." The statute further emphasizes that "disclosure shall be made in the most expedient time possible and without unreasonable delay." Cal. Civ. Code § 1798.82.

125.    Any person or business that is required to issue a security breach notification under the CRA must meet the following requirements under Section 1798.82(d).

(a)    The name and contact information of the reporting person or business subject to this section;

(b)    A list of the types of personal information that were or are reasonably believed to have been the subject of a breach;

(c)    If the information is possible to determine at the time the notice is provided, then any of the following:

    i.    the date of the breach,

    ii.    the estimated date of the breach, or

    iii.    the date range within which the breach occurred. The notification shall also include the date of the notice;

(d)    Whether notification was delayed as a result of a law enforcement investigation, if that information is possible to determine at the time the notice is provided;

(e)    A general description of the breach incident, if that information is possible to determine at the time the notice is provided;

(f)    The toll-free telephone numbers and addresses of the major credit reporting agencies if the breach exposed a social security number or a driver's license or California identification card number;

(g)    If the person or business providing the notification was the source of

the breach, an offer to provide appropriate identity theft prevention and mitigation services, if any, shall be provided at no cost to the affected person for not less than 12 months along with all information necessary to take advantage of the offer to any person whose information was or may have been breached if the breach exposed or may have exposed personal information.

126.    Defendant failed to provide the legally compliant notice under Section 1798.82(d) to Plaintiff and members of the California subclass, including among other things, providing notice of the breach more than four months after the occurrence of the breach.  Plaintiff and class members were entitled to receive timely notice from Defendant, but instead, found out about the breach more than four months after the breach occurred.  Indeed, in its notice, Defendant provided no justification at all for the delay, such as the pendency of a law enforcement investigation which necessitated the delay in notice, and mentions only an internal investigation.  As a result, Defendant has violated Section 1798.82 by not providing legally compliant and timely notice to Plaintiff and class members in "the most expedient time possible without unreasonable delay," as required by the statute.

127.    As a result of the violations of Cal. Civ. Code § 1798.82, Plaintiff and class members suffered incrementally increased damages separate and distinct from those simply caused by the breaches themselves.  Indeed, the delay in providing notice of the breach prevented Plaintiff and class members from taking appropriate protective measures that could have prevented some of the damages they have suffered.

128.    As a direct consequence of the actions as identified above, Plaintiff and class members incurred additional losses and suffered further harm to their privacy, including but not limited to economic loss, the loss of control over the use of their identity, harm to their constitutional right to privacy, lost time dedicated to the investigation of the breach and effort to cure any resulting harm, the need for future expenses and time dedicated to the recovery and protection of further loss,

and privacy injuries associated with having their sensitive and personal information disclosed, that they would not have otherwise incurred but for the data breach of Defendant's computer servers.

129.    As a direct result of Defendant's violation of the California Customer Records Act, Plaintiff and class members were harmed because their sensitive PII stemming from their benefit plans was compromised, placing them at a greater risk of identity theft and subjecting them to identity theft.  Plaintiff and class members also suffered diminution of value of their PII in that it is now easily available to hackers on the dark web.   Plaintiff and class members have also suffered consequential out of pocket losses for procuring credit freeze or protection services, identity theft monitoring, and other expenses relating to identity theft losses or protective measures.

130.    Cal. Civ. Code § 1798.84(b) provides that "[a]ny customer injured as a result of violating the CRA may institute a civil action to recover damages."

131.    As a result of Defendant's violations, Plaintiff and class members are entitled to all actual and compensatory damages according to proof, and to non-economic injunctive relief allowable under the CRA, and to such other and further relief as this Court may deem proper.

## SIXTH CAUSE OF ACTION

**Violation of the California Constitution's Right to Privacy**

**(California Constitution, Article I, Section 1)**

**(On behalf of Plaintiff and the California Subclass)**

132.    Plaintiff hereby re-alleges and incorporates by reference the above allegations by reference as if fully set forth herein.

133.    The California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."  (Cal. Const., art. I, § 1.)

134.    The right to privacy in California's constitution creates a private right of action against private and government entities.  Indeed, "[t]he California Constitution creates a private right that protects individuals from intrusions by private parties."  *In re Google Location History Litigation*, 428 F. Supp. 3d 185, 196 (N.D. Cal. Dec. 19, 2019).

135.    Plaintiff and the California subclass have a legally recognized and protected privacy interest in their PII provided to and obtained by Defendant in connection with their benefit plans, including but not limited to an interest in precluding the dissemination or misuse of this sensitive and confidential information and the misuse of this information for malicious purposes such as the theft of funds and property.

136.    Plaintiff and class members reasonably expected Defendant would prevent the unauthorized viewing, use, manipulation, exfiltration, theft, and disclosure of their personal and sensitive information.

137.    Defendant's conduct described herein resulted in a serious invasion of the privacy of Plaintiff and the California subclass, as the release of the sensitive PII Defendant stored in its computer servers and in connection with their benefit plans could highly offend a reasonable individual.  Indeed, the unauthorized access of Plaintiff's and class members' personal information implicated by Defendant's breach rises to the requisite level of an egregious breach of social norms for purposes of establishing an invasion of privacy.

138.    As a direct consequence of the actions as identified above, Plaintiff and class members incurred additional losses and suffered further harm to their privacy, including but not limited to economic loss, the loss of control over the use of their identity, harm to their constitutional right to privacy, lost time dedicated to the investigation of the breach and effort to cure any resulting harm, the need for future expenses and time dedicated to the recovery and protection of further loss, and privacy injuries associated with having their sensitive PII disclosed, that they

1   would not have otherwise incurred but for the data breach of Plaintiff's and class

2   members' PII stemming from Defendant's computer servers.

3   ## SEVENTH CAUSE OF ACTION

4   **Violation of the Unfair Competition Law ("UCL")**

5   **(Cal. Bus. Prof. Code § 17200, *et seq*.)**

6   **(On behalf of Plaintiff and the California Subclass)**

7   139.    Plaintiff hereby re-alleges and incorporates by reference the above

8   allegations by reference as if fully set forth herein.

9   140.    By reason of the conduct alleged herein, Defendant engaged in

10  unlawful practices within the meaning of the UCL.  The conduct alleged herein is

11  a "business practice" within the meaning of the UCL.

12  141.    By engaging in the above-described unfair business acts and practices,

13  Defendant committed and continues to commit one or more acts of unlawful,

14  unfair, and fraudulent conduct within the meaning of the UCL.  These acts and

15  practices constitute a continuing and ongoing unlawful business activity, as defined

16  by the UCL, and justify the issuance of an injunction and any other equitable relief

17  pursuant to the UCL.

18  142.    Plaintiff and class members were entitled to assume, and did assume,

19  that Defendant would take appropriate measures to keep their PII safe.  Defendant

20  did not disclose at any time that Plaintiff's and class members' PII was vulnerable

21  to unauthorized parties because Defendant's data security measures were

22  inadequate.

23  143.    Defendant violated the UCL by misrepresenting, both by affirmative

24  conduct and by omission, the safety of its computer safeguards and their ability to

25  safely store Plaintiff's and class members' PII.  Defendant also violated the UCL

26  by failing to implement reasonable and appropriate security measures or follow

27  industry standards for data security, failing to comply with its own posted privacy

28  policies, and by failing to provide legally compliant notice to Plaintiff and class

members detailing the full implication of the breach, as required by the California Consumer Records Act.

144.      Defendant's acts, omissions, and misrepresentations as alleged herein were unlawful and in violation of, *inter alia*, Cal. Civ. Code § 1798.81.5(b), Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), and Cal. Bus. & Prof. Code § 22576 (as a result of Defendant failing to comply with its own posted privacy policies).

145.      Defendant engaged in unfair business practices under the "balancing test." The harm caused by Defendant's actions and omissions, as described in detail above, greatly outweigh any perceived utility. Indeed, none of Defendant's actions or inactions can be said to have had any utility at all. Defendant's failures were clearly injurious to Plaintiff and class members, directly causing the harms alleged below.

146.      Defendant also engaged in unfair business practices under the "tethering test." Defendant's actions and omissions, as described in detail above, violated fundamental public policies expressed by the California Legislature. *See, e.g.*, Cal. Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right of privacy in information pertaining to them . . . . The increasing use of computers . . . has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information about California residents is protected.") Indeed, Defendant's acts and omissions thus amount to a clear violation of the law.

147.      Defendant also engaged in unfair business practices under the "FTC test." The harm caused by Defendant's actions and omissions, as described in detail above, is substantial in that it has affected over one million class members and has caused those persons to suffer actual harms. Such harms include a substantial risk of identity theft, disclosure of Plaintiff's and class members' PII to

third parties without their consent, diminution in value of their PII, consequential out of pocket losses for procuring credit freeze or protection services, identity theft monitoring, and other expenses relating to identity theft losses or protective measures.  This harm continues given the fact that Plaintiff's and class members' PII remains in Defendant's possession, without adequate protection, and is also in the hands of those who obtained it without their consent.  Defendant's actions and omissions also violated Section 5(a) of the Federal Trade Commission Act.  *See In re LabMD, Inc.*, FTC Docket No. 9357, FTC File No. 102-3099 (July 28, 2016) (failure to employ reasonable and appropriate measures to secure personal information collected violated § 5(a) of FTC Act).

148.    Defendant's acts and practices constitute a continuing and ongoing unlawful business activity defined by the UCL.  In particular, Defendant failed and continues to fail to implement and maintain reasonable security procedures and practices appropriate to protect the PII, failed and continues to fail to inform Plaintiff and class members of the full implications of the breach of their PII, and made and continues to make misrepresentations to customers regarding the nature and quality of their data protection, all in violation of, *inter alia*, the following California laws:

1. Negligence as defined in California Civil Code section 1714;

2. California Civil Code section 1798.81.5(b);

3. California Civil Code section 1798.82(a);

4. California Civil Code section 1798.150(a);

5. Cal. Bus. & Prof. Code § 22576; and

6. California Constitution, Article I, Section 1.

149.    Defendant's conduct is contrary to the public welfare as it transgresses civil statutes of the State of California designed to protect individuals' constitutional and statutory right to privacy, violates established public policy, and has been pursued to attain an unjustified monetary advantage for Defendant by

creating personal disadvantage and hardship to Plaintiff and class members. As such, Defendant's business practices and acts have been immoral, unethical, oppressive, and unscrupulous and have caused injury to Plaintiff and class members far greater than any alleged countervailing benefit.

150. Defendant made and continues to make the representations set forth above, including but not limited to specific representations in their privacy policy regarding the nature and quality of their data security and their representations that they use commercially reasonable security measures to prevent PII against unauthorized access and use. These false representations were, and continue to be made, likely to deceive the public and reasonable consumers. Defendant, at all times when it made these representations, knew them to be false and intended to, and did, induce reliance upon these false representations by Plaintiff and class members, who reasonably relied upon the aforementioned statements and representations and, as a consequence, suffered economic harms and losses.

151. As a direct and proximate consequence of the actions as identified above, Plaintiff and class members suffered and continue to suffer harms and losses including but not limited to economic loss, the loss of control over the use of their identity, harm to their constitutional right to privacy, lost time dedicated to the investigation of the breach and attempts to cure any harm to their privacy, the need for future expenses and time dedicated to the recovery and protection of further loss, and privacy injuries associated with having their sensitive PII disclosed in connection with Defendant's services.

152. In addition, Plaintiff's and class members' PII was taken and is in the hands of those who will use it for their own advantage, or will sell it for value, making it clear that the stolen information is of tangible value. Plaintiff and class members have also suffered consequential out of pocket losses for procuring credit freeze or protection services, identity theft monitoring, and other expenses relating to identity theft losses or protective measures.

153.    Plaintiff seeks an order of this Court awarding injunctive relief and any other relief allowed under the UCL, including interest and attorneys' fees pursuant to, *inter alia*, Code of Civil Procedure section 1021.5, and to such other and further relief as this Court may deem just and proper.

## PRAYER FOR RELIEF

Plaintiff, on her own behalf and on behalf of all others similarly situated, prays for relief and judgment against Defendant, as follows:

1.    For an order certifying the proposed Class and Subclass pursuant to Federal Rules of Civil Procedure, Rule 23;

2.    For an order appointing Plaintiff Amir Abdulhussein as class representative.

3.    For appointment of Lebe Law, APLC as class counsel for all purposes;

4.    For an order enjoining Defendant, its affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, from continuing the unlawful practices as set forth herein, including but not limited to employing substandard data safety protocols to protect Plaintiff's and class members' sensitive PII.

5.    Requiring Defendant to provide appropriate credit monitoring services to Plaintiff and class members;

6.    For actual, compensatory, consequential, and nominal damages according to proof pursuant to the California Civil Code and all other applicable laws and regulations;

7.    For civil and statutory penalties available under applicable law;

8.    For pre-judgment and post-judgment interest;

9.    Finding that Defendant's conduct was negligent, unfair, and unlawful business practices as alleged herein;

10.    Enjoining Defendant from engaging in further negligent, unfair, and

**CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL**

1   unlawful business practices alleged herein;

2       11.    For an award of attorneys' fees, costs, and expenses as authorized by

3   applicable law; and

4       12.    For such other and further relief as this Court may deem just and

5   proper.

6

7   Dated: October 11, 2022          **Lebe Law, APLC**

8

9   By: _____/s/ Jonathan M. Lebe_____

10           Jonathan M. Lebe

11           Zachary T. Gershman
             Attorneys for Plaintiff Amir Abdulhussein,
             individually and on behalf of all others

12           similarly situated

13

14               **<u>DEMAND FOR JURY TRIAL</u>**

15      Plaintiff demands a trial by jury on all claims so triable.

16

17  Dated: October 11, 2022          **LEBE LAW, APLC**

18

19  By: _____/s/ Jonathan M. Lebe_____

20           Jonathan M. Lebe

21           Zachary T. Gershman
             Attorneys for Plaintiff Amir Abdulhussein,
             individually and on behalf of all others

22           similarly situated

23

24

25

26

27

28

**CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL**